**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    FOR PUBLICATION
------------------------------------------------------------X
In re:
ANTHONY ARMAND ASSANTE,                              Chapter 11
                                                     No. 11-37823 (CGM)
                                    Debtor.
------------------------------------------------------------X
ANTHONY ARMAND ASSANTE,
                                    Plaintiff,
                v.                                   Adv. Pro. No. 12-09018 (CGM)
EASTERN SAVINGS BANK,
                                    Defendant.
------------------------------------------------------------X
APPEARANCES:

McElroy, Deutsch, Mulvaney & Carpenter LLP
88 Pine Street, 24th Floor
New York, NY 10005
By: Elina Chechelnitsky
*Attorney for Plaintiff, Anthony Armand Assante*

Kriss & Feuerstein LLP
360 Lexington Avenue, Suite 1200
New York, NY 10017
By: Lori J. Gilmore-Morris, Of Counsel
*Attorney for Defendant, Eastern Savings Bank*

## MEMORANDUM DECISION GRANTING DEFENDANT'S
## MOTION TO DISMISS ADVERSARY COMPLAINT

The Plaintiff brings this adversary proceeding to subordinate Defendant's mortgage to the claims of all other creditors and to vacate Defendant's lien based on frustration of contract. The Court holds that the claims in Plaintiff's adversary complaint are barred by collateral estoppel because the issues in this proceeding were necessarily decided by the Supreme Court of New York, Orange County in a prior foreclosure proceeding, and the parties had a full and fair opportunity to litigate the issues.

1

**Background**

The Plaintiff, Anthony Armand Assante, who is also the Debtor in the underlying Chapter 11 proceeding, owns three properties in Campbell Hall, New York. *See* Pl.'s Adversary Compl. ¶¶ 5, 8.  Prior to obtaining a loan from Defendant, Plaintiff was indebted to pay five mortgage notes with the total sum of $1,303,863.29, each of which was secured by one or more of Plaintiff's properties. *Id.* ¶ 8. In May 2005, Plaintiff's financial advisors, Nugent & Haeusler, P.C., advised him that it would be in his best interest to consolidate his five mortgages into one loan that would have an overall consolidated interest rate, which would have the effect of reducing the monthly cumulative payment he had been paying to service all five mortgages. *Id.* ¶ 9. Plaintiff's financial advisors retained Superior Mortgage, Inc. ("Superior") to act as agent for Plaintiff in locating mortgage financing opportunities. *Id.* ¶ 11. Superior identified Eastern Savings Bank ("Eastern") to implement the refinancing plan recommended by Plaintiff's financial advisors. *Id.* ¶ 12.

Through arrangements made by Superior, Eastern and Plaintiff's financial advisors, Pepper Sheeley, a licensed real estate appraiser in the State of New York, was retained to conduct appraisals of Plaintiff's three properties for purposes of valuing potential collateral to support a loan. *Id.* ¶ 33. Ms. Sheeley valued Plaintiff's principal residence at 451 Hulsetown Road at $2,000,000, 435 Hulsetown Road at $320,000, and 467 Hulsetown Road at $680,000. *Id.* ¶ 34.

On September 22, 2005, Plaintiff attended a closing where he executed a Note in favor of Eastern in the principal sum of $1,500,000.00. Def.'s Mot. Dismiss Ex. B-2, at 1 (Note). Plaintiff also executed a Mortgage in favor of Eastern in the principal sum of $1,500,000.00, which encumbered the three properties owned by Plaintiff located at 435 Hulsetown Road, 451

2

Hulsetown Road, and 467 Hulsetown Road. Def.'s Mot. Dismiss Ex. B-1, at 2-3 (Mortgage). From the proceeds of the loan, the sum of $1,303,863.29 was used to pay off the existing five mortgages on Plaintiff's properties. Pl.'s Adversary Compl. ¶ 35. Additionally, Plaintiff received $90,321.53 in cash, and $15,216 of the loan proceeds was paid to Superior in consideration for its work. *Id.* ¶¶ 37, 53.

Under the terms of the Note, Plaintiff was required to make monthly payments of principal and interest to Defendant by the first of the month. Def.'s Mot. Dismiss Ex. B-2, at 1. Plaintiff made all required monthly payments from the closing of the loan on September 22, 2005 through and including March 1, 2009. Pl.'s Adversary Compl. ¶ 43; *see also* Def.'s Mot. Dismiss 6. Plaintiff failed to make the April 1, 2009 payment and all subsequent payments. Pl.'s Adversary Compl. ¶ 41; *see also* Def.'s Mot. Dismiss 6.

## *U.S. District Court Proceeding*

On August 7, 2009, Plaintiff commenced an action against Defendant in the United States District Court for the Southern District of New York. *See* Def.'s Mot. Dismiss Ex. B-4 (First Amended Complaint in District Court action). The Plaintiff asserted a total of six claims against Eastern: a RICO claim; a General Business Law § 349 claim; a claim for breach of covenant of good faith and fair dealing; claim for fraud; claim seeking recission of the Mortgage; and a claim for violation of the Truth-in-Lending Act. *See id.* In response, Defendant filed a Motion to Dismiss and Plaintiff voluntarily discontinued the case on December 21, 2009 without prejudice to Defendant. *See* Def.'s Mot. Dismiss Ex. B-5 (Motion to Dismiss in District Court case); *see also* Def.'s Mot. to Dismiss 7.

3

### *Supreme Court of New York Foreclosure Proceeding*

On September 4, 2009, Defendant commenced a foreclosure action against Plaintiff in the Supreme Court of New York, Orange County. *See* Def.'s Mot. Dismiss Ex. B-3 (Complaint in foreclosure action). In Plaintiff's Amended Answer, he raised affirmative defenses of fraud and unclean hands, as well as four counterclaims against Eastern. *See* Def.'s Mot. Dismiss Ex. B-20 (Amended Answer in foreclosure action). Plaintiff's counterclaims were as follows: Count 1 - Fraud as a Defense to the Contract between Eastern and Mr. Assante; Count II - Fraud Against Eastern; Count III - Violation of New York Banking Law § 590-b(2); and Count IV - Declaratory Judgment of Invalidity of the Promissory Note dated September 22, 2005. *Id.* at 8. The Defendant moved to strike Plaintiff's Amended Answer, counterclaims and defenses, and for summary judgment. Def.'s Mot. Dismiss Ex. B-5, at 2 (Attorney Affirmation of Motion to Dismiss in District Court case). The state court entered an order on February 9, 2011, dismissing Plaintiff's affirmative defenses and counterclaims, and granting Defendant summary judgment on its cause of action to foreclose the mortgage. Def.'s Mot. Dismiss Ex. A, at 19-20 (February 9, 2011 Order). On August 17, 2011, the Orange County Supreme Court entered a Judgment of Foreclosure on Plaintiff's three properties. *See* Def.'s Mot. Dismiss Ex. C (Judgment of Foreclosure).

### *U.S. Bankruptcy Court Proceeding*

On October 7, 2011, before foreclosure of Plaintiff's properties could take place, Plaintiff filed a Chapter 11 petition with this Court. Plaintiff subsequently brought this Adversary Proceeding on March 7, 2012 by filing a Complaint against Defendant seeking equitable subordination of Eastern's mortgage and frustration of contract. *See* Pl.'s Adversary Compl ¶¶ 67-82. Plaintiff argued Eastern's lien should be subordinated to the claims of all other creditors

pursuant to section 510(c) of the Bankruptcy Code. *Id.* ¶ 74. Plaintiff alleged that Eastern, through its agent Superior Mortgage, directed Ms. Sheeley to falsely under-appraise his three properties in order to justify the presentation of an unfavorable sub-prime loan, and to secure the loan through a mortgage on all three properties when it only needed his primary residence to receive a favorable loan-to-value ratio. *Id.* ¶ 71. Plaintiff further alleged that Eastern's lien should be vacated because it frustrated the contract between the parties by issuing a Note with significantly worse terms than his previous mortgages, even though it knew of his financial goals. *Id.* ¶¶ 75-82.

On March 28, 2012, before Plaintiff had served the summons and complaint, Defendant filed the Motion to Dismiss now pending before this Court. The filing of the motion was prior to the expiration of the 120 day time period a plaintiff is given to serve the summons and complaint under Bankruptcy Rule 7004(c). Defendant did not raise the defense of lack of personal jurisdiction in its motion. Instead, it alleged that Plaintiff's Complaint should be barred by collateral estoppel as it relied on the same factual allegations Plaintiff asserted in the foreclosure action, and which were rejected by the Orange County Supreme Court in its February 9, 2011 Order. Def.'s Mot. Dismiss 14. Plaintiff did not respond to the motion prior to the May 1, 2012 hearing on the false assumption that a motion to dismiss could not be heard before he served the summons and complaint on Defendant.

## Statement of Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(K) (determinations of the validity, extent, or priority of liens).

## Summary of the Law

Upon filing a complaint in an adversary proceeding, a plaintiff has 120 days to serve the summons and a copy of the complaint on the defendant. *See* Fed. R. Bankr. P. 7004(c); Fed. R. Civ. P. 4(m). If the defendant files a responsive pleading or pre-answer motion to dismiss before the service of the summons, then the defense of lack of personal jurisdiction must be raised in defendant's papers. Fed. R. Civ. P. 12(h)(1). Failure to do so waives the defense and acts as consent to the court's personal jurisdiction. *See id.*; *Pardazi v. Cullman Medical Center*, 896 F.2d 1313, 1317 (11th Cir. 1990) (holding that defendant waived any objections that it might have had to the court's exercise of personal jurisdiction by failing to raise its personal jurisdiction and service-of-process objections in its pre-answer motion to dismiss).

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Bankr. P. 7012. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Raine v. Lorimar Productions, Inc.*, 71 B.R. 450, 452-53 (S.D.N.Y. 1987) (citing *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)). "For the purpose of a motion to dismiss, the factual allegations of the complaint must be taken as true and must be taken in the light most favorable to plaintiff." *Id.* at 453 (quoting *In re HRT Industries, Inc.*, 29 B.R. 861, 863 (S.D.N.Y. 1983). The complaint must set forth sufficient information for the court to determine whether some recognized legal theory exists to permit relief to the plaintiff. 2 Moore's Federal Practice § 12.34 (Matthew Bender 3d ed.). Doubt as to a party's ability to prove their case, regardless of how unlikely it seems they will be able to prove it, is no reason for dismissing their pleadings under Federal Rule 12(b)(6). *Id.*

In *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), the Second Circuit stated that "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *See also* Fed. R. Civ. P. 10(c) (applicable herein pursuant to Fed. R. Bankr. P. 7010). The Court may also consider matters of which the judge may take judicial notice. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint. We may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.") (citations omitted); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142 (2d Cir. 1993); 2 Moore's Federal Practice § 12.34[2] (Matthew Bender 3d ed.).

Generally, the defense of collateral estoppel asserted by the Defendant in this adversary proceeding is an affirmative defense to be asserted in an answer pursuant to Federal Rule of Civil Procedure 8(c). *See 9281 Shore Rd. Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Rd. Owners Corp.)*, 214 B.R. 676, 684 (Bankr. E.D.N.Y. 1997). "However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Id.* at 684 (quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). The Court may take judicial notice of all the documents that make up the record before it, as well as those contained in the record before the Orange County Supreme Court, without needing to convert the motion to one for summary judgment. *Id.* at 684. This Court finds that all relevant facts necessary to determine the present motion to dismiss are contained in the record before it. Accordingly, the Defendant's motion to dismiss is properly before the Court.

The Defendant argues that this Court should apply the doctrine of collateral estoppel to dismiss Plaintiff's complaint. Collateral estoppel is used by courts to prevent "a party from relitigating an issue clearly raised in a prior action and decided against that party . . . ." *Id.* (quoting *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993)). There is a two-step test for determining whether collateral estoppel applies: "(1) was the issue 'necessarily decided' by the court; and (2) did the litigant have a 'full and fair opportunity' to litigate the issue." *Id.* at 684-85. If the party seeking application of collateral estoppel can prove that the issue sought to be litigated is identical to an issue necessarily decided in the prior action, then the burden shifts to the party seeking to avoid the use of collateral estoppel to demonstrate that it did not have a full and fair opportunity to litigate the issue. *Conte*, 996 F.2d at 1400; *9281 Shore Rd. Owners Corp.*, 214 B.R. at 685. There are several non-exclusive factors the Court may consider in determining whether issues have been 'fully and fairly litigated,' including "the size of the claim, the extent of the litigation, and the foreseeability of future litigation." *9281 Shore Rd. Owners Corp.*, 214 B.R. at 685.

The Plaintiff's first cause of action in his adversary complaint seeks equitable subordination of Defendant's lien to the claims of all other creditors, pursuant to section 510(c) of the Bankruptcy Code. "In order to succeed on a claim for equitable subordination, the movant must show that: (1) the claimant engaged in some type of inequitable or fraudulent conduct; (2) the misconduct resulted in injury to creditors; and (3) equitable subordination would be consistent with other bankruptcy law." *9281 Shore Rd. Owners Corp.*, 214 B.R. at 689 (citing *In re Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977); *In re Poughkeepsie Hotel Associates Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991)).

Federal courts in the Second Circuit have held that "where the same allegations of misconduct were raised as affirmative defenses and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claims or otherwise attack the validity of the creditor's lien." *Id.* at 689. In *9281 Shore Rd. Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Rd. Owners Corp.)*, debtor sought to relitigate claims that were identical to its affirmative defenses and counterclaims in a state foreclosure action. 214 B.R. 676 (Bankr. E.D.N.Y. 1997). Although the debtor alleged different legal theories in the bankruptcy action, the underlying facts were the same as in the state court action. One such legal theory alleged by debtor was equitable subordination of the mortgage held by defendant to the claims of all creditors, pursuant to section 510(c) of the Bankruptcy Code. 214 B.R. at 689. In both actions, the debtor claimed the defendant engaged in fraudulent conduct. *Id.* at 690. The court found that debtor sought to relitigate the fraud claim under the guise of equitable subordination. *Id.* It held that "where the same allegations of misconduct were raised in the first action and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claim." *Id.* Debtor's claim seeking equitable subordination was dismissed on the basis that it was precluded by collateral estoppel. *Id.* at 691.

*Defendant's Consent to the Court's Exercise of Personal Jurisdiction*

Pursuant to Bankruptcy Rule 7004(a) and Federal Rule of Civil Procedure 4(m), Plaintiff had 120 days to serve the summons and complaint from the time he commenced this adversary proceeding on March 7, 2012. Shortly after Defendant received notice of the adversary proceeding, it filed a pre-answer motion to dismiss under Federal Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Plaintiff did not serve the summons upon

9

Defendant as of the hearing date for the motion, although Plaintiff's 120 day time limit to serve the summons and complaint had not yet elapsed.

Defendant neglected to raise any objection for lack of personal jurisdiction or insufficent service of process in its motion papers, thereby waiving Plaintiff's non-service of the summons. Lack of personal jurisdiction is a waivable defense if it is not first raised in a defendant's pre-answer motion to dismiss or responsive pleading. *See* Fed. R. Civ. P. 12(h)(1); *Pardazi*, 896 F.2d at 1317. According to Rule 12(h)(1), by failing to timely raise an objection, Defendant consented to the Court's exercise of personal jurisdiction.

### *Plaintiff's Claims of Equitable Subordination and Frustration of Contract are Barred by Collateral Estoppel*

This Court finds that Plaintiff's claims are barred by collateral estoppel because the issues he seeks to litigate are identical to the issues necessarily decided by the Orange County Supreme Court, and these very same issues were already fully and fairly litigated in the foreclosure action. The Plaintiff now seeks different remedies based on the same factual allegations set forth in the foreclosure action and under the guise of new legal theories.

The following allegations asserted by the Plaintiff in the Complaint are identical to allegations he made in his Amended Answer in the Supreme Court of New York foreclosure action:

- The Plaintiff alleged that Eastern directed Ms. Sheeley to under-appraise his properties in order to justify the offer of an unfavorable subprime loan, premised on a purported insufficient loan-to-value ratio that would allow for cross-collaterialization of all three properties to secure an onerous, high interest rate Eastern loan. *Compare* Pl.'s Adversary Compl. ¶¶ 54, 58, 59, *with* Def.'s Mot. Dismiss Ex. B-20 ¶¶ 116, 117, 119.

10

- The Plaintiff alleged that had Eastern properly appraised his properties, either the primary residence or a combination of the other two properties would provide sufficient collateral for the $1.5 million loan without the need to cross-collaterialize all three. *Compare* Pl.'s Adversary Compl. ¶¶ 55-57, *with* Def.'s Mot. Dismiss Ex. B-20 ¶¶ 122-125.

- The Plaintiff alleged that "Eastern had an established and deliberate business pattern and practice in place in 2005 of . . . using false appraisals to induce persons with valuable properties to borrow money from Eastern under terms that were likely to place the borrower in default so that Eastern would then profit by taking and selling those properties in foreclosure." *Compare* Pl.'s Adversary Compl. ¶ 31, *with* Def.'s Mot. Dismiss Ex. B-20 ¶ 66.[1]

The Supreme Court of New York has already rejected these allegations in its February 9, 2011 Order, which in part provided as follows:

> Here, it is submitted, Eastern demonstrated, prima facie, that it did not engage in immoral and unconscionable conduct concerning the loan, either concerning Sheeley's appraisal or the collateral for the loan. Indeed, given . . . the amount and interest rates on the loans [Assante] already owed on the properties, the loan at issue does not appear on its face to be the product of immoral and unconscionable conduct. Further, there is no evidence that Eastern was in any relevant way advantaged over Assante. Rather, Eastern and Assante were strangers engaged in an arm's length business transaction that was obtained and negotiated for Assante by his own professional financial advisors. Finally, a party is under an obligation to read a document before signing it, and cannot generally avoid the effect of the document on the ground that he or she did not read it or know its contents (see Augustine v. BankUnited FSB, 75 A.D.3d 596).
> . . . .

---

[1] "Finally, it is noted, nothing in the cease and desist order or supporting documents between Eastern and [the Office of Thrift Supervision] indicates that Eastern was accused of or found to have been engaged in any conduct related to the influencing of appraisals to obtain any advantage." Def.'s Mot. Dismiss Ex. A, at 17.

11

> In sum, Assante's affirmative defenses and counterclaims are dismissed, and Eastern is granted summary judgment as against Assante on its cause of action to foreclose the mortgage.

Def.'s Mot. Dismiss Ex. A, at 18-20.

While a claim for equitable subordination under section 510(c) of the Bankruptcy Code is unique to bankruptcy, the underlying issue of a creditor's conduct is not. *See 9281 Shore Rd. Owners Corp.*, 214 B.R. at 689. Defendant's conduct in relation to the entire loan transaction with Plaintiff was scrutinized by the Orange County Supreme Court and found to be valid. The state court found that Defendant did not engage in any fraudulent, immoral, or unconscionable conduct with respect to the transaction in question, nor did it influence the appraisal performed by Ms. Sheeley. *See* Def.'s Mot. Dismiss Ex. A, at 14-17. The state court's decision must be accorded Full Faith and Credit under 11 U.S.C. § 1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . ." 11 U.S.C. § 1738 (2012).

In addition, the motion is granted by default since the Plaintiff failed to respond or even request an extension of time to prepare a response. While neither the Federal Rules of Civil Procedure nor the Local Bankruptcy Rules for the Southern District of New York require this Court to grant a motion by default simply because the Plaintiff failed to respond, a default may be entered where the Complaint is not sufficient on its own to withstand dismissal. *Resolution Trust Corp. v. 260-68 Elizabeth St. Owners Assocs.*, 1997 U.S. Dist. LEXIS 5369 (S.D.N.Y. Apr. 23, 1997) (citing *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983)). The Defendant filed its motion on March 28, 2012, and this Court did not receive a response to the motion prior to the hearing that was held on May, 1, 2012. Sufficient grounds exist to grant Defendant's motion by default as the Complaint alone was not enough to prevent dismissal for collateral estoppel.

**Conclusion**

Counts I and II of Plaintiff's Adversary Complaint are barred by collateral estoppel and are hereby dismissed. The issues underlying both counts were necessarily decided by the Supreme Court of New York, Orange County in the foreclosure action, and Plaintiff had a full and fair opportunity to litigate the issues.

Counsel for Defendant should submit an order consistent with this decision.

Dated: Poughkeepsie, New York
       May 22, 2012

/s/ Cecelia G. Morris
*Chief United States Bankruptcy Judge*